Chief District Judge David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JESSE JAMES BAILEY,

Defendant.

NO. CR23-5085-DGE-01

UNITED STATES' SENTENCING MEMORANDUM

Defendant Jesse James Bailey (Jesse Bailey) appears before this Court for sentencing in the above-captioned case pursuant to his guilty plea to a superseding information on November 20, 2024, to the following three charges: (1) Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (Presentence Report (PSR) at ¶¶ 1-2; Plea Agreement at ¶ 2.) Pursuant to the plea agreement, the parties jointly recommend this Court sentence Jesse Bailey to a 210-month total term of imprisonment (150 months on Counts 1 and 3 to run concurrently with one another, and 60 months on Count 2 to run consecutively to all other terms of imprisonment). The government further recommends the term of imprisonment be followed by a five-year term of supervised release (the minimum term permitted on Count 1), and a $300 special assessment. This sentence is sufficient, but not greater than necessary, to fulfill the sentencing goals set forth in 18 U.S.C. § 3553(a).

United States' Sentencing Memorandum - 1
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# I.   BACKGROUND

**A.   Offense Conduct**

    **1.   Summary of Investigation**

In March 2023, the Federal Bureau of Investigation, the Drug Enforcement Administration, and other federal and local law enforcement agencies conducted a series of arrests that were the culmination of a two-year investigation into drug trafficking focusing on two prison gangs, the Aryan Family and Omerta, which are predominately white prison gangs that have a presence both inside and out of prison facilities. (PSR ¶¶ 34, 37.) These gangs engage in drug trafficking as one of their primary purposes, and the investigation identified numerous individuals affiliated with the gangs who were determined to have been involved in drug trafficking and money laundering, including the distribution of multi-pound quantities of methamphetamine, fentanyl, heroin, and cocaine throughout western Washington and other states. *Id.* The investigative team devoted substantial resources to identifying the organizational structure of the drug trafficking organization (DTO), including multiple rounds of court-authorized interceptions of wire and electronic communications, surveillance, the use of confidential informants, search warrants, and other investigative techniques. (PSR ¶¶ 35.)

Through this investigation, agents learned of three distribution cells who were working together as the Aryan Family/Omerta DTO: one led by Jesse Bailey, a second led by co-defendant Bryson Gill, and the third led by co-defendant Yehoshua Kilp. (PSR ¶ 36.). During the investigation, agents seized an estimated 830,000 fentanyl pills, 223 pounds of methamphetamine, multiple-pound quantities of fentanyl powder, cocaine, heroin, and marijuana, $338,000 of suspected drug proceeds, and 48 firearms from members of the conspiracy. (PSR ¶ 38.) Many of those firearms were seized from Jesse Bailey's residence and a storage unit under his control. (PSR ¶¶ 44, 60.) Additionally, during the coordinated arrests of the DTO members in March 2023, law enforcement seized approximately 22 pounds of methamphetamine, 26 pounds of fentanyl in pill and

United States' Sentencing Memorandum - 2
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

powder form, six pounds of heroin, more than $330,000 of suspected drug proceeds, and 177 additional firearms. (PSR ¶ 39.)

### 2.    Jesse Bailey's Role in the DTO

Jesse Bailey is a large-scale drug trafficker who maintained a leadership role over co-defendants Ronald McComb, Gregory Beers, Eric Smith, Joseph Hempel, C'la Morales, Ronnie Griffin (Jesse Bailey's stepfather), Anna Sarnes, Anthony Escoto, Dana Hanson, Justin Hanson, and others drug redistributors whom Jesse Bailey supplied. (*See, e.g.* PSR ¶¶ 11, 14, 19, 21, 24, 25, 27, 28, 30, 31, 42, 49, 52-53, 54, 56-57, 59.) He worked in partnership with Thomas Carver and hand-in-hand with his wife, Candace Bailey, in running the DTO. (*See*, *e.g.* PSR ¶¶ 6, 10, 46-48, 50-51, 55, 60-71.).

Jesse Bailey first became a target of the investigation in August 2021 after agents followed two initial targets of the investigation (and fellow Aryan Family gang members) to his house in Steilacoom Washington. (PSR ¶ 41). Agents began tracking Jesse Bailey's movements. which were consistent with drug trafficking. *Id.*

#### a.    Jesse and Candace Bailey jointly possessed large quantities of drugs, hundreds of thousands of dollars of drug proceeds, and an arsenal of weapons in their storage unit

In February 2022, Agents served a warrant on a storage unit rented by Jesse and Candace Bailey after following Jesse Bailey to the storage unit immediately after he dropped off a drug shipment to co-conspirator Ronald McComb. (PSR ¶ 42.) Inside, agents located several packages of methamphetamine containing over three kilograms of "pure" actual methamphetamine, 1,252.2 grams of blue fentanyl pills (likely over 12,000 pills) that were stamped with the prescription insignia for Oxycodone, a kilo press, drug packaging materials, a digital scale, and $210,781 in drug trafficking proceeds. (PSR ¶ 43.)

In that same storage unit, the Baileys kept an arsenal of firearms, large quantities of ammunition, and various firearm parts, including the following (PSR ¶ 44-45):

United States' Sentencing Memorandum - 3
*United States v. Jesse Bailey*, CR23-5085-DGE-01

- An AR-15 type rifle;
- A Sun City Machinery 20-gauge shotgun;
- A Mossberg 930 12-gauge shotgun;
- A Smith & Wesson 500 revolver;
- A Heckler & Koch P30 pistol;
- A Heckler & Koch HK416 pistol;
- An Aero Precision Xl5 rifle with serial number X332532;
- An Aero Precision Xl5 rifle with serial number X384302;
- An Aero Precision Freedom rifle with serial number 14481-July4;
- An Aero Precision M4El rifle equipped with a firearm silencer;
- An Aero Precision MS rifle;
- An Aero Precision Betsy rifle;
- An Aero Precision EPC-9 rifle with serial number SF-031095 equipped with a firearm silencer;
- An Aero Precision EPC-9 rifle with serial number SF-011187;
- A Glock 21 handgun;
- A Glock-type Polymer80 handgun with no serial number;
- A Glock 19 handgun;
- A Glock 17 handgun;
- A black Polymer 80 handgun;
- A silver firearm silencer; and
- A black firearm silencer, with no serial number.



*Evidence found at the Baileys' Storage Unit*

United States' Sentencing Memorandum - 4
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**b.      Jesse Bailey worked in partnership with Thomas Carver and Candace Bailey to distribute hundreds of pounds of methamphetamine and hundreds of thousands of fentanyl pills**

Intercepted calls show Jesse Bailey, in partnership with Thomas Carver, distributed hundreds of pounds of methamphetamine and hundreds of thousands of fentanyl pills on a weekly basis. For example, on August 6, 2022, in a lawfully intercepted call, Thomas Carver told Jesse Bailey that he had picked up 50 pounds of methamphetamine from their supplier and would get another 50 pounds later that day. (PSR ¶ 47.) Two days later, Carver told Jesse Bailey that he was putting together the next order of methamphetamine. (PSR ¶ 48.) As detailed more thoroughly in the Government's sentencing memorandum for Thomas Carver, intercepted communications between Jesse Bailey and Carver showed that they regularly purchased hundreds of thousands of fentanyl pills at a time and that they trusted each other enough to share access to a shop where they stored narcotics and drug proceeds. (Dkt. 1082 at 3-7.)

Similarly, intercepted communications between Jesse and Candace Bailey show that they were partners who regularly discussed the purchase and sale of massive quantities of controlled substances. For example, in July 2022, in a lawfully intercepted call, Jesse Bailey told Candace Bailey about an opportunity to buy fentanyl pills for 70 cents per pill from Bryson Gill, who had 800,000 pills available. (PSR ¶ 46.) Jesse and Candace Bailey then collaborated on how much to charge their customers per pill. *Id.*

On August 14, 2022, agents intercepted a call between Jesse Bailey, Candace Bailey, and Ronnie Griffin, in which Candace described attending a meeting of various drug dealers who wanted to work together to pool their drug trafficking proceeds. Candace Bailey told Griffin that they turned down the offer because they were moving more drugs than all the other attendees. (PSR ¶ 51.)

//

//

United States' Sentencing Memorandum - 5
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**c.    Jesse Bailey held a leadership role over multiple drug redistributors**

Jesse Bailey regularly sold large quantities of controlled substances to multiple redistributors including Ronald McComb, Gregory Beers, Eric Smith, Joseph Hempel, C'la Morales, Ronnie Griffin (Jesse Bailey's stepfather), Anthony Escoto, Anna Sarnes, Dana Hanson, and Justin Hanson.

Jesse Bailey sold large quantities of narcotics to Ronald McComb beginning no later than February 2022, when agents observed him meet with McComb to deliver controlled substances. (PSR ¶ 42.) Shortly after that meeting, agents conducted a traffic stop on McComb's vehicle. *Id.* Pursuant to a warrant, agents located 501 grams of heroin, 106 grams of fentanyl, and a Sig Sauer 9mm pistol loaded with a 30-round extended magazine. *Id.* As detailed further in the Government's sentencing memorandum for Ronald McComb, Jesse Bailey regularly sold McComb between 20 and 50 pounds of methamphetamine and ten to forty thousand fentanyl pills at a time despite knowing that McComb was regularly armed with firearms. (Dkt. 939 at 3-4; PSR ¶ 50, 53.)

On August 11, 2022, law enforcement intercepted a call between McComb and Jesse Bailey during which McComb warned Jesse Bailey that the methamphetamine they were selling tested positive for fentanyl. Rather than stopping the drug shipments, Jesse Bailey sold McComb an additional 20 pounds of methamphetamine and 20,000 fentanyl pills. (Dkt. 939 at 3.) In the weeks that followed, McComb and Jesse Bailey discussed how to "wash" the methamphetamine to remove the yellow tint so that they could still sell it, and the strength and flavors of the new "rainbow" colored fentanyl pills. (Dkt. 939 at 4.)

Jesse Bailey regularly sold drugs to Gregory Beers—an even more well-armed drug dealer. (PSR ¶ 14.) As detailed more thoroughly in the Government's sentencing memorandum for Gregory Beers, agents intercepted Jesse Bailey regularly selling Beers multi-pound quantities of methamphetamine and thousands of fentanyl pills. (Dkt. 1313

United States' Sentencing Memorandum - 6
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

at 3-4.) Agents intercepted videos sent by Beers to a DOC inmate in which Beers displayed numerous firearms, large amounts of ammunition, and bullet-proof vests in his bedroom. *Id.* When agents attempted to arrest Beers, he threw away a pistol and evaded law enforcement by jumping over a fence. *Id.* Inside Beers' residence, law enforcement found multiple firearms, two bullet proof vests, large quantities of ammunition, 200 grams of fentanyl, and 315 grams of methamphetamine. *Id.* Law enforcement found additional firearms, ammunition and bullet proof vests in Beers' Mercedes. *Id.* When law enforcement later arrested Beers, they located two additional pistols, $7,000 in drug trafficking proceeds, and $36,000 worth of jewelry. *Id.*

Jesse Bailey was the main supplier to Eric Smith—another well-armed drug dealer. (PSR ¶ 19.) Intercepted communications revealed that Jesse Bailey regularly sold Smith multi-pound quantities of methamphetamine. For example, on August 9, 2022, Jesse Bailey told Smith that he had six pounds of methamphetamine set aside for him. (PSR ¶ 49.) As detailed more thoroughly in the Government's sentencing memorandum for Eric Smith, Smith was arrested twice with a cache of narcotics and firearms and admitted to losing a pistol and a stash of narcotics on a third occasion while being chased by law enforcement. (Dkt. 1142 at 3-4.) Intercepted communications between Jesse Bailey and Smith discuss the guns seized by police demonstrating Jesse Bailey knew that Smith armed himself with weapons while dealing the drugs Jesse Bailey provided. *Id.*

Intercepted communications show that Jesse Bailey supplied drug redistributor Joseph Hempel—another well-armed drug dealer. (PSR ¶ 21.) For example, on August 22, 2022, Hempel ordered 14,000 fentanyl pills from Jesse Bailey. (Dkt. 1291 at 3.) This appears to be a weekly order, as only five days later Jesse Bailey sold Hempel an additional 25 pounds of methamphetamine and 13,000 fentanyl pills. *Id.* On November 25, 2022, Jesse Bailey sold Hempel six pounds of methamphetamine and 20,000 fentanyl pills for $22,500. *Id.* (PSR ¶ 57.) As detailed more thoroughly in the Government's sentencing memorandum on Hempel, when agents arrested him, they found 109.5 grams

United States' Sentencing Memorandum - 7
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

of fentanyl pills, 1.6 kilograms of heroin, 11 drug scales, $14,799 of drug proceeds, body armor, ammunition, and multiple firearms. (DKT 1291 at 3.)

Jesse Bailey regularly supplied C'la Morales, a well-armed drug dealer, with multi-pound quantities of methamphetamine and tens of thousands of fentanyl pills. (PSR ¶ 24.) As detailed more thoroughly in the Government's sentencing memorandum for Morales, Jesse Bailey regularly sold Morales 10,000 fentanyl pills, 10 ounces of heroin, and two pounds of methamphetamine every few weeks. (Dkt. 1216 at 3-6.) When agents went to arrest Morales, they located 480 grams of heroin and 641 grams of fentanyl-laced pills hidden in the engine compartment of a vehicle inside her storage unit that was within arm's reach of a loaded shotgun. *Id.* at 4. In Morales' other vehicle parked outside of the storage unit, agents found an additional two loaded pistols. *Id.* at 5. Intercepted communications between Morales and Jesse Bailey indicate that Morales knew he armed himself with fully automatic weapons. *Id.* at 3. To help Jesse Bailey track down a firearm taken from his storage unit, Morales sent Jesse Bailey a picture of a firearm someone was trying to sell her followed by the text, "I guess it's fully auto too." *Id.*

When Jesse Bailey became fearful that he was being tracked by law enforcement, he used his stepfather, Ronnie Griffin, to conduct drug deals on his behalf. As detailed more thoroughly in the Government's sentencing memorandum for Ronnie Griffin, Jesse Bailey allowed Griffin to handle drug sales to some of Jesse Bailey's smaller drug customers in return for splitting the drug proceeds. (Dkt. 1083 at 3-4.)

Jesse Bailey supplied Anna Sarnes with large quantities of controlled substances. As detailed more thoroughly in the Government's sentencing memorandum for Anna Sarnes, Sarnes placed an order with Jesse Bailey to purchase 22,500 fentanyl pills for $18,000, which Jesse Bailey had Carver conduct on his behalf. (PSR ¶ 59; Dkt. 1091 at 3-4). Agents stopped Sarnes' vehicle shortly after they observed her meet with Carver. *Id.* Inside her vehicle, law enforcement found 2,389.9 grams of fentanyl pills (roughly 24,000 pills), 262.1 grams of meth, and 15.6 grams of heroin. *Id.*

United States' Sentencing Memorandum - 8
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Jesse Bailey regularly supplied both Dana and Justin Hanson with multi-pound quantities of methamphetamine. As detailed in the Government's sentencing memorandum for Justin Hanson, intercepted communications between Jesse Bailey and the Hansons show that they regularly purchased five pounds of methamphetamine and small quantities of heroin to transport back to the Eastern District of Washington for redistribution. (Dkt. 1282 at 3.)

d.      **Jesse and Candace Bailey kept an arsenal of weapons, including a fully automatic assault rifle, in their residence which they used to store, wash, and distribute controlled substances**

On March 22, 2023, agents executed a warrant on Jesse and Candace Bailey's residence. Inside Jesse Bailey's Dodge Ram, which he frequently drove to conduct drug deals, agents found a loaded handgun in the center console. (PSR ¶ 60(b).) In the garage, law enforcement found a safe containing $155,140 in United States currency, body armor, and 23 firearms including a fully automatic Aero Precision M4. Agents found an additional loaded firearm in a safe under Jesse and Candace Bailey's bed.

e.      **Jesse and Candace Bailey engaged in an extensive money-laundering operation involving hundreds of thousands of dollars**

Jesse and Candace Bailey utilized multiple processes to "clean" the drug money that they obtained. For example, they frequently went to casinos including the Emerald Queen Casino and the Ilani Casino where they engaged in "bill stuffing"—a process in which they stuffed large amounts of cash into the slot machines and then cashed out the tickets with the design to give legitimacy to their cash and conceal its illicit nature. [1] When law enforcement seized the cash from Jesse and Candace Bailey's storage unit, Candace later reported this seizure as a burglary claiming that the $220,000 in cash was from gambling winnings. *See* Exhibit 1 (February 2022 University Place Police Report).

---

[1] Jesse and Candace Bailey were eventually prohibited from going to the Emerald Queen Casino based on these actions.

United States' Sentencing Memorandum - 9
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Jesse and Candace Bailey also conspired to deposit cash proceeds from drug trafficking into their BECU accounts. (PSR ¶ 67-70.) In total, they deposited at least $469,378 in cash and $117,337 in peer-to-peer payments into their BECU account and an additional $75,000 into a Qualstar account they controlled. (PSR ¶ 70.) All these funds represented profits of the drug-trafficking conspiracy. They then used these funds to purchase luxury items including $17,553 for a 2019 truck, $20,000 for a 2018 AMG Mercedes Benz, and $75,000 for a 2021 Ram Truck. (PSR ¶ 71.)

**B.    Procedural History**

The grand jury indicted Jesse Bailey with conspiracy to distribute controlled substances (Count 1) and possession of a controlled substance with intent to distribute (Counts 3 and 8), on March 16, 2023. (Dkt. 1.) Law enforcement arrested Jesse Bailey on March 23, 2023, and he made his initial appearance that same day. (PSR ¶ 4.) On November 20, 2024, Jesse Bailey pleaded guilty to a Superseding Felony Information charging conspiracy to distribute controlled substances (Count 1), possession of a firearm in furtherance of a drug trafficking crime (Count 2), and conspiracy to commit money laundering (Count 3). (PSR ¶ 2).

## II.    BACKGROUND ON SENTENCING

Under 18 U.S.C. § 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). There are four sentencing purposes set forth in Section 3553(a)(2): (1) just punishment or retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); (2) deterrence ("to afford adequate deterrence to criminal conduct"); (3) incapacitation ("to protect the public from further crimes of the defendant"); and (4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See Rita v. United States*, 551 U.S. 338, 348 (2007) (using these four terms); *see also Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

United States' Sentencing Memorandum - 10
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

In determining a sentence that complies with these four sentencing purposes, a sentencing court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant," the "kinds of sentences available," the Sentencing Guidelines range and Sentencing Commission's relevant policy statements, the "need to provide restitution to any victims of the offense," and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3)-(7). When considering these factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." *Id*. at 50. Here, a downward variance is warranted to sentence Jesse Bailey consistently with his co-defendant Bryson Gill. Both are equally culpable leaders of this drug trafficking organization and have pleaded guilty to joint sentencing recommendations of 17.5 years. The government believes this sentence is sufficient, but no greater than necessary to fulfil the sentencing goals of 3553(a).

## III.   SENTENCING GUIDELINES CALCULATIONS

### A.   Offense Level

#### 1.   Offense Level for Count 1:

Based on the quantity of narcotics involved, the parties stipulated to a base offense level of 38, the highest offense level available under the Drug Quantity Table of USSG § 2D1.1. (*See* Plea Agreement ¶ 10.a.) The Probation Office concurred, finding (conservatively) that the offense involved 486,704 kilograms of converted drug weight. (PSR ¶ 80.)

The parties agreed that the following sentencing provisions apply (*see* Plea Agreement ¶ 10.c-f):

a.   A two-level increase, pursuant to USSG § 2D1.1(b)(12), for maintaining a drug premises for the purpose of manufacturing and/or distributing

United States' Sentencing Memorandum - 11
*United States v. Jesse Bailey*, CR23-5085-DGE-01

controlled substances;

b.      A two-level increase, pursuant to USSG § 2D1.1(b)(13)(B), for representing or marketing as a legitimately manufactured drug a mixture or substance containing fentanyl and acting with willful blindness or conscious avoidance of knowledge that such mixture or substance was not the legitimately manufactured drug;

c.      A two-level increase pursuant to USSG § 2S1.1(b)(2)(B), because the defendant was convicted under 18 U.S.C. § 1956;

d.      A two-level increase pursuant to USSG § 3B1.1(c), because the defendant was an organizer, leader, manager, or supervisor in the criminal activity;

e.      A three-level decrease for acceptance of responsibility pursuant to USSG § 3E1.1.

Counts 1 and 3 group and thus do not receive a multiple count adjustment. *See* USSG § 2S1.1 Application Note 6; USSG § 3D1.2(d). The total offense level is 43.

**B.      Defendant's Criminal History**

Neither party has objected to the Probation Office's assessment of Jesse Bailey's prior criminal convictions putting him in Criminal History Category III. (PSR ¶¶ 112-14.)

**C.      Guidelines Range**

Based on a total offense level of 43 and criminal history category III, the guidelines sentencing range is life imprisonment on Counts 1 and 3, plus 60 months' consecutive on Count 2. (PSR ¶ 159.) *See* USSG § 5G1.2(a) and cmt. 2(A).

**IV.      FACTORS RELATED TO SENTENCING RECOMMENDATION**

The United States respectfully requests that the Court follow the joint recommendation and sentence Jesse Bailey to 210 months in custody followed by a five-year term of supervised release (150 months on Counts 1 and 3 to run concurrently with one another, and 60 months on Count 2 to run consecutively any other term of imprisonment). The United States believes this sentence sufficient, but no greater than necessary in light of "the nature and circumstances of the offense," and the need for the

United States' Sentencing Memorandum - 12
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the jointly recommended sentence.

**A.      Nature and Circumstances, and Seriousness of the Offense**

Jesse Bailey played a leadership role in purchasing, processing, and distributing massive quantities of fentanyl pills, heroin, and methamphetamine (including methamphetamine he knew to be laced with fentanyl). He sold multi-pound quantities of fentanyl and methamphetamine to at least 10 other drug redistributors, many of whom he knew to be armed with firearms. More gravely, Jesse Bailey's conduct in the drug conspiracy involved large numbers of firearms, ammunition, firearms accessories, large capacity magazines, body armor, silencers, and a fully automatic M4 machine gun.

The damage that Jesse Bailey's crimes have caused is immeasurable. As this Court is all too aware, these drugs have a devastating impact on the community. Users of these drugs frequently resort to stealing—from family members, friends, and complete strangers—to feed their addictions. No doubt, drug users are responsible for a large percentage of these crimes, as well as the violent crimes, in our communities.

More importantly, these drugs destroy the lives of those who use them, and the lives of the users' families and friends. Those families and friends are prisoners, forced to watch the toll these drugs take on their sons, daughters, parents, or friends. While the number of people directly and indirectly impacted by the drugs Jesse Bailey and his co-conspirators trafficked is difficult to quantify, it is undeniably extensive based on the sheer quantity of drugs he distributed. These drugs undoubtedly fell into the hands of long-time addicts, first-time users, and everyone in between.

Especially with respect to first-time users of fentanyl, who are sometimes unaware that that the counterfeit oxycodone pills they are taking contain fentanyl, their lives are

United States' Sentencing Memorandum - 13
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

put at risk with every use of these dangerous substances. This has resulted in an unprecedented epidemic of overdose deaths in the United States, and an unrelenting increase in overdose deaths in Washington state. To illustrate, the National Center for Health Statistics, Centers for Disease Control, estimates that, despite a decrease in overdose deaths nationwide, Washington had an increase in overdose deaths of over 27% in the year ending December 2023. *See* Ken Alltucker, *Drug overdoses spiked in these states. But they have dropped elsewhere in the country.*, USA Today, May 15, 2024, available at: https://www.usatoday.com/story/news/health/2024/05/15/drug-overdose-deaths-2023-data/73670888007/ (last accessed June 24, 2025). *See also* Alex Fitzpatrick, *Fatal drug overdoses are falling — but not everywhere*, Axios, February 20, 2025, available at: https://www.axios.com/2025/02/20/drug-overdoses-death-rate-map (last accessed June 24, 2025). According to the later article, the age-adjusted drug overdose death rate was 33.7 per 100,000 people in 2022 and 42.4 in 2023 in the State of Washington—an increase of 25.8%

As this Court is aware, the scale of the problem is massive. The Washington State Department of Health (DOH) tracks opioid and drug use data which demonstrates a crisis in number of drug-related overdose deaths occurring statewide over the past several years, as illustrated by the graphic published by the DOH on their website, below:



United States' Sentencing Memorandum - 14
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Washington State Department of Health, *Opioid and Drug Use Data Dashboard*, available at: https://doh.wa.gov/data-and-statistical-reports/washington-tracking-network-wtn/opioids/overdose-dashboard (last accessed June 24, 2025). This data shows the number of drug overdose deaths occurring annually in the state more than doubled from 2019 to 2023.

The severity of Jesse Bailey's crime and the potential impact it has had on the community demonstrates that a lengthy 210-month sentence is justified under the sentencing factors. The government feels that this sentence is sufficient, but no greater than necessary to acknowledge the devastating impact his drugs have had on the community while also sentencing him in line with other similarly situated defendants.

**B.    Similarly Situated Defendants**

This Court has already sentenced multiple defendants in this criminal conspiracy and numerous other defendants have pleaded guilty with either joint sentencing recommendations or caps on the government's sentencing recommendation. For ease of comparison, the government has created a chart outlining the pleas that have been accepted and the relative sentences imposed. *See* Exhibit 2 (Sentencing Chart). The government has identified Jesse Bailey and Bryson Gill as the two most culpable defendants in this conspiracy. Both defendants pleaded guilty to the same charges with an agreed sentencing recommendation for each of them of 210 months.[2] If the Court follows the joint recommendation, the sentences for these two defendants would be the lengthiest imposed in this case, reflecting their greater culpability. The government believes this sentence is sufficient, but no greater than necessary to hold Jesse Bailey accountable for his crimes.

//

//

---

[2] The Court followed the joint recommendation and sentenced Bryson Gill to 210 months.

United States' Sentencing Memorandum - 15
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## V.    CONCLUSION

For all the reasons set forth above, the government respectfully recommends the Court follow the joint recommendation of the parties and sentence Jesse Bailey to a total custodial sentence of 210 months, to be followed by a five-year term of supervised release, and a $300 special assessment.

DATED June 25, 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*/s/ Zachary W. Dillon*
ZACHARY W. DILLON
MAX B. SHINER
Assistant United States Attorneys
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
Phone: 253-428-3822
Fax: 253-428-3826
Email: max.shiner@usdoj.gov

United States' Sentencing Memorandum - 16
*United States v. Jesse Bailey*, CR23-5085-DGE-01

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800